UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sandra H., | Case No. 18-cv-0632 (ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court on Plaintiff Sandra H.'s ("Plaintiff") Motion for Summary Judgment (Dkt. No. 14) ("Motion") and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Defendant") Cross Motion for Summary Judgment (Dkt. No. 16) ("Cross Motion"). Plaintiff filed this action seeking review of the denial of her application for Supplemental Security Income by the Social Security Administration ("SSA"). Plaintiff contends that the Administrative Law Judge ("ALJ") failed to adequately develop the administrative record regarding limitations caused by her mental-health impairments and therefore erred in determining her residual functional capacity ("RFC"). The Court concludes that the record in this case was sufficiently developed and that the ALJ did not otherwise commit reversable error. For the reasons stated below, the Court grants Defendant's Cross Motion and denies Plaintiff's Motion.

## I. BACKGROUND

Plaintiff filed an application for Title XVI Supplemental Security Income on November 4, 2013, alleging disability beginning November 1, 2007. (R. 90-92.)[1] Her application was denied initially (R. 101) and on reconsideration (R. 116). Plaintiff requested a hearing before an ALJ, which was held on December 6, 2016. (R. 39.) At the hearing, the ALJ must follow a five-step sequential analysis[2] to determine the existence and extent of a claimant's disability. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairment, RFC, age, education, and work experience. *See* 20 C.F.R. § 416.920(a)(4); *see also Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992). The ALJ in this matter made the following determinations as part of the five-step disability evaluation process:

---

[1] The Social Security Administrative Record ("R.") is available at Dkt. No. 13.

[2] The Eighth Circuit has described the five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 13, 2014, the amended alleged onset date of disability.[3] (*See* R. 22.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depression, anxiety disorder with posttraumatic stress disorder and panic symptoms, obesity, headaches, left knee osteoarthritis and meniscus tears, diabetes, and a history of alcohol and drug abuse in remission. (R. 22.) Other impairments, including obstructive sleep apnea and a history of menorrhagia with iron anemia, were deemed non-severe by the ALJ. (R. 22.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23.) With respect to the severity of Plaintiff's mental impairments, the ALJ determined that she had moderate restrictions in daily living activities; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, or pace; but that these limitations, taken together, did not met or medically equal the criteria of listing 12.02 (organic mental disorders). (R. 23-24.) Plaintiff does not contend in this proceeding that

---

[3] At the hearing before the ALJ, Plaintiff amended her application to assert disability beginning September 13, 2014, which the ALJ allowed. (*See* R. 20, 43-44.)

she had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

At step four, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: lifting 10 pounds occasionally and 5 pounds frequently; standing and walking no more than 2 hours out of 8 hours; [no] ladders, ropes or scaffolds, frequent ramps and stairs use; [no] frequent balance, stoop, kneel, crouch and crawl; no kneeling on the left side as a part of the job task; routine repetitive instructions and tasks; brief and superficial contact with others (akin to an '8' in the fifth digit in the DOT code); work in a setting where alcohol and drugs are not sold, served, or readily available.

(R. 25.) Most of the RFC relates to strictly physical limitations brought on by the obesity and severe knee impairments found at step two; those aspects of the RFC are not challenged by Plaintiff in these proceedings. As discussed more fully below, however, Plaintiff contends that the ALJ understated the extent to which her mental-health impairments limited her ability to work after the onset date of disability, which Plaintiff contends is predicated upon the ALJ's failure to adequately develop the record.

At step five, the ALJ determined that Plaintiff would be unable to perform any past relevant work, but that there existed jobs in significant numbers in the national economy that she could perform given her RFC. (R. 32.) Based on the testimony of a vocational expert, the ALJ concluded that, given the RFC set forth above, Plaintiff could be expected "to perform the requirements of representative occupations such as semiconductor bonder (DOT 726.685-066) with 1,500 jobs in Minnesota and 30,000 jobs nationally as well as optical final assembler (DOT 713.687-018) with 500 jobs in

Minnesota and 10,000 jobs nationally." (R. 33.) Plaintiff contends that this step-five conclusion was wrong because the RFC upon which the conclusion (and the testimony of the vocational expert) had been based was flawed; a more accurate RFC, she argues, would have resulted in a finding that she was unable to perform work that existed in significant numbers in the national economy. Plaintiff seeks remand for further administrative proceedings on that basis.

The Appeals Council declined review of the ALJ's decision (R. 1-3), which made the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then filed this judicial action. The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions. The parties have filed cross-motions for summary judgment, which are now pending before the Court and ready for review.

## II. LEGAL STANDARD

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to

5

support the Commissioner's conclusions." *Id.* (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). In reviewing the record for substantial evidence of lack of disability, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

The Court "considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*; *see also Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). At the same time, however, "'a reviewing court cannot search the record to find other grounds to support the decision'" of the ALJ. *Shanda v. Colvin*, No. 14-cv-1838 (MJD/JSM), 2015 WL 4077511, at *29 (D. Minn. July 6, 2015) (quoting *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990)). "'A court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision.'" *Id.*

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Eighth Circuit has held that "a

6

'claimant's residual functional capacity is a medical question.'" *Id.* (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "'[S]ome medical evidence' must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)).

An ALJ should consider several factors, in addition to the objective medical evidence, in assessing a claimant's subjective symptoms, including daily activities; work history; intensity, duration, and frequency of symptoms; any side effects and efficacy of medications; triggering and aggravating factors; and functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *5-7 (S.S.A. Mar. 16, 2016) (listing these factors as relevant in evaluating the intensity, persistence, and limiting effects of a person's symptoms). But the ALJ need not explicitly discuss each factor. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

## III. DISCUSSION

### A. Development of the Record

In determining Plaintiff's RFC, the ALJ gave "limited weight" (R. 31) to the opinions of Donala K. Jordan, M.S., who treated Plaintiff's mental-health problems for several months beginning in 2014 (R. 651-60); and gave "partial weight" (R. 28) to the opinions of Dr. Alford Karayusuf, M.D., who performed a consultative examination for Plaintiff on September 13, 2014 (R. 445-48). Neither Dr. Karayusuf nor Jordan was a

"treating source" within the meaning of § 416.927.[4] Both medical professionals opined, broadly speaking, that Plaintiff's mental-health impairments would leave her unable to interact consistently with coworkers or the public and therefore incapable of maintaining adequate pace or persistence in the workplace. (*See* R. 448 (opinion of Dr. Karayusuf that Plaintiff "is able to understand, retain and follow simple instructions. She is not able to interact with fellow workers, supervisors and the public. She is therefore not able to maintain pace and persistence."); R. 657 (opinion of Jordan that Plaintiff had marked limitations in ability to understand, remember, and carry out very short and simple instructions or interact appropriately with the general public).) The ALJ agreed with Dr. Karayusuf insofar as he thought Plaintiff "could understand, retain and follow simple instructions" (R. 28), but rejected Dr. Karayusuf's opinions regarding her alleged inability to interact with others and maintain pace and persistence. In other words, the ALJ agreed with Dr. Karayusuf about what Plaintiff *could* do, but rejected his opinions regarding what she *could not* do. Similarly, the ALJ rejected Jordan's opinion that Plaintiff would struggle to carry out even simple instructions and had markedly affected social functioning. (R. 31.)

---

[4] A treating source must have "an ongoing treatment relationship" with the claimant. 20 C.F.R. § 416.927(a)(2). Dr. Karayusuf performed only a single consultative examination of Plaintiff. Jordan, who is identified as an intern and a Practicum Student in the medical records at the time of treatment (R. 617, 623, 653-54, 659-60), did not qualify as an "acceptable medical source," 20 C.F.R. § 416.902(a), and therefore cannot be regarded as a treating source either, *see* 20 C.F.R. § 416.927(a)(2).

Dr. Karayusuf and Jordan were the only two medical professionals to examine Plaintiff for mental-health impairments and offer an opinion regarding the effect of those impairments on her ability to work.[5] Plaintiff argues that, having rejected these opinions, the ALJ was obligated to further develop the record and obtain another functional assessment from a qualified medical source, e.g., a consultative examination from a treating or examining source. (Dkt. No. 15 at 21-22.)

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (collecting cases). That duty extends, where appropriate, to arranging for a consultative examination regarding impairments that are not adequately fleshed out in the medical record. *See, e.g.*, 20 C.F.R. § 416.917; *Godoua v. Colvin*, 564 F. App'x 876, 877-78 (8th Cir. 2014) (per curiam); *Snead*, 360 F.3d at 838-39; *Cole v. Colvin*, No. 3:15-cv-0127 (JTR), 2016 WL 4076837, at *2-3 (E.D. Ark. Aug. 1, 2016). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

---

[5] A group of state agency medical consultants also offered opinions regarding Plaintiff's RFC. (R. 91-116.) These opinions were rejected ("given no weight") by the ALJ—not for overstating the extent of Plaintiff's limitations, but for drastically *understating* those limitations and for not being based on a review of the entire record. (R. 31.) Indeed, the state agency consultants concluded that Plaintiff did not have a single mental or physical impairment that rose to the level of "severe." (R. 91-116.)

9

But neither the *medical* evidence nor the *opinion* evidence regarding Plaintiff's mental-health impairments were obviously underdeveloped. With respect to the medical evidence: The ALJ's description of the underlying mental-health records for the period between December 2015 and August 2016 runs to well over a full page in the opinion denying benefits. (R. 29-31.) The underlying medical records themselves from this period are interspersed with discussion of both physical and mental impairments (*see generally* R. 661-1088); that said, a substantial percentage of these records consist of discussion of mental-health impairments, as shown by the lengthy summarization of those records in the ALJ's opinion (R. 29-31). Further, as explained above, Jordan treated Plaintiff for several months in 2014 and 2015; these records comprise over another 30 pages of the medical record and are focused entirely on mental-health maladies.[6] (R. 616-48.)

Nor was the ALJ bereft of medical opinions regarding how Plaintiff's mental-health impairments affected her ability to work. As mentioned above, both Jordan (R. 657-60) and Dr. Karayusuf (R. 445-48) offered their opinion regarding the effect that the mental-health impairments would have on the ability of Plaintiff to maintain

---

[6] Plaintiff cites *Merdan v. Astrue*, No. 10-cv-2376 (SRN/SER), 2011 WL 3555428 (D. Minn. July 22, 2011), *R&R adopted*, 2011 WL 3555425 (D. Minn. Aug. 11, 2011), as a comparator instance where remand was necessary due to failure to develop the record regarding mental-health impairments. But a close review of *Merdan* reveals that the underlying medical record revealed only "sporadic, superficial, vague references" to the claimant's depression. *Merdan*, 2011 WL 3555428, at *15. The medical record in this case, by contrast, is far more developed.

employment, and both were given partial weight. Although the ALJ rejected some of both opinions, "a lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability, as 'the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). This case is different from *McCaskill v. Berryhill*, in which the ALJ failed to "explain why, after purporting to give [a medical source's] opinions 'great weight,' [the ALJ] rejected the very conclusions upon which [the source] was asked to give her opinion, and which the ALJ claimed to adopt." 4:17-cv-04121 (KES), 2018 WL 2144553, at *20 (D.S.D. Apr. 20, 2018). Here, by contrast, the ALJ gave the opinions only "limited weight" or "partial weight" and explained why the weight was assigned. (R. 28, 31.) The ALJ was not required to continue developing the record until a medical professional offered an opinion regarding RFC with which he entirely agreed. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) ("The determination of RFC . . . is an issue reserved to the SSA. In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence . . . . That is, the SSA need not accept only physicians' opinions."). Finally, although Plaintiff suggests that the ALJ should have ordered a consultative examination, the record already contained a report from a consultative examination by Dr. Karayusuf focused strictly on mental health. (R. 445-48.) Having given little weight to Dr. Karayusuf's opinion

regarding the effect of Plaintiff's mental-health impairments on her ability to work because the ALJ found the opinion was inconsistent with the medical records (*see generally* R. 27-31), it is unclear why a second mental-health consultative examination—even if it supported the additional limitations sought by Plaintiff—would be given more weight by the ALJ. Similarly, Plaintiff has not identified a treating source who could perform a second consultative examination.

This is not a case in which a suggestion of a severe disorder appears in the record but goes unexplored by the ALJ. *See, e.g.*, *Lott v. Colvin*, 772 F.3d 546, 551 (8th Cir. 2014) (reversing ALJ decision where record did not contain "essential" test for determining whether claimant met listed impairment); *Louise W. v. Berryhill*, No. 17-cv-4973 (SRN/KMM), 2019 WL 404038, at *4-5 (D. Minn. Jan. 28, 2019) (recommending remand where the medical record "raise[d] the possibility of a severe impairment" but the ALJ failed to analyze the impairment). The ALJ was never under any misapprehension that Plaintiff's mental-health impairments were not a substantial limitation on her ability to work, and the RFC reflects such limitations. (R. 25.) But the ALJ reasonably concluded that the evidence already in the record—including multiple treatment notes, two opinions from medical professionals who examined Plaintiff, and testimony from Plaintiff regarding the severity of her impairments—was sufficient upon which to base his RFC determination. "An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001)

(quotation omitted). As explained below, the ALJ's conclusions regarding Plaintiff's RFC were supported by substantial evidence. The ALJ was therefore not obligated to solicit further evidence.

B.     **Weighting of Opinions and Substantial Evidence**

Although largely presented as a claim about inadequate development of the record, Plaintiff's core argument in these proceedings appears to be somewhat different: that the opinions regarding RFC offered by Dr. Karayusuf and Jordan were wrongly discounted by the ALJ. Specifically, Plaintiff contends that the ALJ did not adequately explain the basis for discounting those opinions and that the ALJ's ultimate RFC conclusion was not based on substantial evidence in the record as a whole. The Court rejects these arguments as well.

As discussed above, Dr. Karayusuf and Jordan were not "treating sources" within the meaning of § 416.927. This distinction matters greatly here because, although the ALJ must "always give *good reasons* in our notice of determination or decision for the weight we give your *treating* source's medical opinion," 20 C.F.R. § 416.927(c)(2) (emphases added), the ALJ's duty with respect to non-treating sources is more limited, needing only to "*explain the weight* given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case," 20 C.F.R. § 416.927(f)(2) (emphasis added). "There is a marked difference between the requirement of giving

'good reasons' for the weight assigned to treating sources and merely 'explaining the weight given' to non-treating sources . . . . [I]n the case of non-treating sources, simply assigning a particular weight, without further comment, is enough to satisfy the requirements of [the Social Security Act]."[7] *Bankhead v. Berryhill*, No. 4:17-cv-2441 (SNLJ), 2019 WL 183970, at *6 (E.D. Mo. Jan. 14, 2019). By assigning an explicit weight to the opinions of both Dr. Karayusuf and Jordan—partial weight and limited weight, respectively—and explaining the reasons for those conclusions, the ALJ more than met his obligations under § 416.927.[8]

This does not end the inquiry into the ALJ's RFC findings. The RFC determined by the ALJ still must be supported by substantial evidence in the record as a whole. *See Lacroix v. Barnhart*, 465 F.3d 881, 888-89 (8th Cir. 2006). The ALJ adjusted Plaintiff's RFC to account for her mental-health impairments by limiting her only to "routine repetitive instructions and tasks" and "brief and superficial contact with others." (R. 25.)

---

[7] *Bankhead* discusses the relevant standard under § 404.1527, but that provision is substantively identical to § 416.927, which applies here.

[8] Plaintiff takes fault generally with the abbreviated explanations by the ALJ for why he had discounted the opinions of Dr. Karayusuf and Jordan. For example, the ALJ stated that Jordan's opinion was 'not consistent with the pattern of care, medication use, and activities reported much less the mental status examinations" without immediate citation to the record in support of that conclusion. (R. 31.) As just explained, § 416.927 requires only an explanation of the weight given to non-treating sources such as Dr. Karayusuf and Jordan. That said, the ALJ's comments about the opinions of Dr. Karayusuf and Jordan being inconsistent with the record are best understood in reference to the ALJ's extended description of the medical record itself, which is replete with citations to the record. (*See* R. 28-31.)

14

Plaintiff argues that the RFC should have been further restricted, consistent with the opinions of Dr. Karayusuf and Jordan, to find that she could not interact with coworkers or the public and could not maintain adequate pace and persistence in the workplace.

Such a conclusion might *also* have been supported by substantial evidence, but so was the ALJ's ultimate RFC determination. *See Medhaug*, 578 F.3d at 813 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." (quotation omitted)). With respect to interacting with others, the ALJ noted that the record did not reflect the extreme limitations suggested by Dr. Karayusuf or Jordan. Plaintiff self-reported to Jordan in February 2015 that she was not isolating and that she had attended a professional basketball game without incident. (R. 29 (citing R. 617).) The record also reflected that Plaintiff remained "socially engaged" with a roommate, her boyfriend, and his four children. (R. 30-31.) The ALJ noted that Plaintiff had reported to medical professionals that she walked her dog three times a day, went grocery shopping with a friend in her building, and visited the friend several times a week. (R. 30.) These and other factors identified by the ALJ suggested that Plaintiff was not quite as limited[9] in personal interactions to the extent suggested by Dr. Karayusuf and Jordan, who described Plaintiff as having a total inability to interact with others. *See*

---

9   The RFC found by the ALJ restricts Plaintiff to "brief and superficial contact with others." (R. 25.)

15

*Chesser v. Berryhill*, 858 F.3d 1161, 1167 (8th Cir. 2017) (discounting plaintiff's self-reported mental limitations in non-treating source opinion in light of plaintiff's own adult function report that she could prepare simple meals, pay bills, and count change).

With respect to the ability to maintain adequate pace and persistence, the ALJ *agreed* with Dr. Karayusuf that Plaintiff could retain and follow simple instructions. (R. 28.) Although Dr. Karayusuf opined that Plaintiff could not maintain pace and persistence, he did so only because he believed she was "not able to interact with fellow workers, supervisors, and the public" (R. 448)—a conclusion that the ALJ rejected based on the supporting evidence cited above regarding her daily activities. *See Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) (discounting non-treating source's opinion regarding mental limitations because it was inconsistent with Plaintiff's ability "to complete personal care and household tasks, and that the evidence showed that he appeared to do better when living alone"). Similarly, Jordan's opinions regarding Plaintiff's ability to act with persistence and pace appear to have been based on her putative limitations in interacting with others. (R. 657-59.) The ALJ also noted that Jordan's opinions regarding ability to understand and carry out simple instructions were inconsistent not only with Dr. Karayusuf's opinion but also with the activities reported by Plaintiff, which included cooking, grocery shopping, cleaning, and other daily living behaviors that indicated she could perform simple tasks. (R. 30, 31.)

Plaintiff makes two additional arguments that the ALJ stepped outside the record in determining her RFC. First, the ALJ cited Plaintiff's "improvement" with mental-

16

health care following her consultation with Dr. Karayusuf as a basis for discounting Dr. Karayusuf's opinion. (R. 28.) Plaintiff uses this to suggest that the ALJ found that her impairments would likely be still further alleviated by more aggressive mental-health treatment. (Dkt. No. 15 at 22-23.) The Court recognizes that "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse." *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (quotation omitted). Further, the ALJ may not make strictly medical determinations. *See Willcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008) ("[T]he ALJ is not qualified to give a medical opinion . . . ."). But here, the ALJ did neither of those two things. Rather, the ALJ concluded that Plaintiff's treatment *had* improved with treatment since Dr. Karayusuf's September 13, 2014 examination, not that Plaintiff *would* improve with treatment. The ALJ was not positing his hypothesis as to how Plaintiff might react to a more intensive treatment regime, but instead appropriately examining the evidence in the record, including the extent to which Plaintiff had proven herself capable of seeking and remaining compliant with treatment, including that at her April 27, 2016 psychiatric visit she reported her medications made her "much more calm and [and helped with] sleeping better at night-through the night" and her depressive symptoms were "considerably less." (R. 906; *see also* R. 31 (noting Plaintiff's April 27, 2016 report that prior medications helped with sleep and depression and Plaintiff's May 31, 2016 report of increased energy and improved sleep, along with improved affect).) At that visit, she reported that when she

17

could not sleep, she would clean, and that she had a significant other and "would like to become pregnant." (R. 906.) The ALJ's description of improvements in Plaintiff's symptoms after she saw Dr. Karayusuf does not constitute a medical opinion.

Second, Plaintiff briefly suggests in a single sentence in her memorandum that the ALJ improperly considered her prior use of illicit substances in determining whether she was disabled. (*See* Dkt. No. 15 at 18 ("An ALJ must take into account the reasons for a claimant's failure to take medication, and, when illicit substances are involved, the ALJ must determine if Plaintiff would be disabled by his conditions even if he were not using such substances.").) "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability . . . ." 20 C.F.R. § 416.935. Although the ALJ noted that Plaintiff's medical record was at times inconsistent about when she stopped using drugs, the ALJ did not find that the prior use contributed to her other impairments. Put another way, the ALJ concluded that even assuming that illicit drug use contributed *nothing* to Plaintiff's mental-health impairments, those impairments were nevertheless not disabling for purposes of the Social Security Act. Plaintiff could not have been prejudiced by the ALJ's handling of this factor.

## C. Conclusion

The ALJ adequately developed the record in this matter, and his findings regarding Plaintiff's RFC were supported by substantial evidence in the record as a

18

whole. Accordingly, the motion for summary judgment of the Acting Commissioner of Social Security is granted, while the motion for summary judgment of Plaintiff is denied.

## IV. ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff Sandra H.'s Motion for Summary Judgment (Dkt. No. 14) is **DENIED**;

2. Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Cross Motion for Summary Judgment (Dkt. No. 16) is **GRANTED**; and

3. This case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 25, 2019
*s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge